In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-24-00209-CR
_____

## JOSE ANTONIO PINEDA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-03-03198-CR**

## MEMORANDUM OPINION

Jose Antonio Pineda appeals his conviction for continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02(b). In two issues on appeal, Pineda argues the trial court prevented him from presenting a meaningful defense when he sustained the State's objection to his questioning of one of the victims and erred by admitting medical records that contained hearsay. We conclude that the trial court properly limited Pineda's questioning of the victim, Pineda was not prevented from

presenting a meaningful defense, and the trial court properly admitted the medical records under the hearsay exception. We affirm.

## Background

In June 2022, Pineda was indicted on one count of continuous sexual abuse of a child younger than fourteen years old, a first-degree felony. *See id*. § 21.02(b), (h). According to the indictment, between June 1, 2011, and August 31, 2018, Pineda committed two or more acts of sexual abuse against "Yvette," "Dara," and "Jessie," each child younger than fourteen years of age.[1] The indictment included the following allegations:

1. Indecency with a child by contact by engaging in sexual contact by touching the breast or genitals of [Yvette], a child younger than 17 years of age, and
2. Indecency with a child by contact by engaging in sexual contact with [Yvette], a child younger than 17 years of age, by having said child touch the defendant's genitals, and
3. Aggravated sexual assault of a child by causing his finger to penetrate the sexual organ of [Yvette], a child who was then and there younger than 14 years of age, and
4. Indecency with a child by contact by engaging in sexual contact by touching the breast or anus or genitals of [Dara], a child younger than 17 years of age, and
5. Aggravated sexual assault of a child by causing the defendant's sexual organ or mouth to contact or penetrate the sexual organ, anus or mouth of [Dara], a child who was then and there younger than 14 years of age, and

---

[1]We use pseudonyms to refer to the victims, all minors, and we refer to their family members by their relationship to the victims to protect the victims' privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

6. Aggravated sexual assault of a child by causing the defendant's sexual organ to contact or penetrate the sexual organ, anus or mouth of [Jessie], a child who was then and there younger than 14 years of age.

In February 2024, Pineda's indictment was amended to include three additional allegations involving Dara and two additional allegations involving Jessie.[2]

In June 2024, Pineda's jury trial began. At trial, the State presented six witnesses, including: Detective Brett Irvine with the Conroe Police Department; Kelly Garcia, a bilingual forensic interviewer at Children's Safe Harbor; the three victims named in the indictment, Yvette, Dara and Jessie; and Jo McDonald, a registered nurse who performed forensic examinations on Dara and Yvette. Pineda did not call any witnesses at trial.

The jury found Pineda guilty of continuous sexual abuse of a child as charged in the indictment and sentenced him to life imprisonment. Pineda was also required to register as a sex offender in accordance with the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. Ch. 62.

In two issues, Pineda challenges his conviction and argues he was prevented from presenting a meaningful defense when the trial court (1) sustained the State's objection to Pineda's questioning of Dara about an incident between Mother and Dara's father and (2) admitted certain medical records.

---

[2]The amended indictment also removed the allegations regarding touching of the breast. *See* Tex. Penal Code Ann. § 21.02(c) (excluding touching of the breast as sexual contact for purposes of continuous sexual abuse of a young child).

**Standard of Review**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). The trial court's decision will be not disturbed unless it is outside of the "zone of reasonable disagreement[.]" *Id.* We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Munoz v. State*, 288 S.W.3d 55, 57 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)) (other citation omitted).

**Analysis**

In his first issue, Pineda argues that during Dara's cross-examination, counsel sought to ask questions related to Mother's relationship with Dara's father. After the State objected, the parties approached the bench, and defense counsel explained that he wanted to question Dara about an incident between Mother and her father that led to Dara being Mother's protector.

During cross-examination of Dara, defense counsel questioned Dara about the divorce between Mother and her father. Dara testified that her parents had fights and arguments and that she wanted to be Mother's protector. Dara acknowledged that this was because of what happened with her dad and when defense counsel asked what that event was, the State objected as to relevance.

4

The attorneys approached the bench and defense counsel explained that it is the defense's theory that Dara's allegations are untrue and were fabricated when Mother learned that Pineda was engaged to another woman and was expecting a child. Defense counsel suggested that Dara made false outcries to defend Mother from additional hurt. The trial court sustained the State's relevance objection and explained that the event involving Dara's father was "years and years before this event[.]" Defense counsel stated that without exploring the event, they wouldn't know the impact on Dara, and it would preclude him from providing a defense. He stated that he wanted to know why the event was so traumatic that Dara needed to be the protector of Mother. The trial court sustained the State's objection under Texas Rules of Evidence 401 and 403 but stated that it was mostly based on relevance. The trial court added that defense counsel was limited from discussing the event as it has already been discussed that Mother's and Dara's father's divorce was bad.

The Texas Rules of Evidence "favor the admission of all logically relevant evidence[.]" *Montgomery*, 810 S.W.2d at 375. Evidence is relevant if it tends to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Montgomery*, 810 S.W.2d at 386 (citation omitted).

Dara identified Pineda at trial and testified that she called him Toni. She stated that when she first met Toni, she was young and very protective of Mother because of what happened with her dad. Dara testified that with Toni being someone new she was a little observant but "it was fine." She recalled that she was eight or nine years old when she first met Pineda and testified that Pineda sexually abused her from the age of nine or ten to fourteen.

On cross-examination, Dara stated that Pineda came into their household about a year after her parents split and during that time, she had a "protective sense" for Mother. She testified that her sense of protection remained when Pineda came into the household and she wanted to protect Mother and her sisters from hurt. According to Dara, Mother and Pineda stopped seeing each other when Mother was pregnant with her younger sister, but the breakup was not as traumatic as when her father left the household. Dara testified that Mother and Pineda were angry with one another when they broke up, but they had a good enough relationship that they moved in with him in 2016, and Mother and Pineda were seeing each other on and off.

Dara testified that she recalled Pineda starting to date other women, but she did not recall when he was married and did not recall her younger sister stating that she had a stepmother or that Pineda was married. She stated that she did not know

6

that Pineda was having engagement parties when she, her sisters and Mother were in Kansas.

Dara explained that she wanted to be an advocate at the Montgomery County Women's Center to help and support survivors of domestic violence or sexual assault with community resources. She testified that advocacy was the context in which she wanted to protect Mother, because there were times that she felt Mother needed an advocate. She stated that she did not recall Mother telling her on the trip to Kansas that Pineda was engaged, had a pregnant girlfriend, or that they were getting married. Dara stated that the conversation began with Jessie asking her and Yvette questions, and Jessie discussed one specific event that occurred to her.

The record reflects that during cross-examination, defense counsel questioned Dara about what being Mother's protector meant and why she wanted to protect Mother. Defense counsel was able to explore Dara's reasoning. Defense counsel also questioned Dara about her outcry and if and when she learned about Pineda's engagement. Through cross-examination, Pineda questioned Dara about a possible motive for her outcry in an attempt to establish a meaningful defense. That said, Pineda did not establish how the incident involving Dara's father was relevant, considering Dara was questioned and explained on cross-examination that she wanted to protect and advocate for Mother.

We hold the trial court did not abuse its discretion by limiting questions related to the girls' father, as it was within the zone of reasonable disagreement that such questioning was irrelevant. *See* Tex. R. Evid. 401; *Montgomery*, 810 S.W.2d at 386, 391. We overrule issue one.

In his second issue, Pineda argues the trial court erred by admitting medical records over his hearsay objection. According to Pineda, the State failed to establish that the complaining witnesses were aware that their statements were for the purposes of medical diagnosis or treatment and that their treatment depended on the veracity of their statements. He also complains that the record does not establish that the complaining witnesses knew they needed to be honest with medical personnel and therefore there was no proper foundation before the admission of the records. Pineda asserts that the trial court improperly admitted the records and his objection should have been sustained.

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements [guarantee] their reliability." *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) (citation omitted). Under Texas Rule of Evidence 803(4), the trial court may admit into evidence statements "made for—and …reasonably pertinent to—medical diagnosis or treatment" that "describes medical history; past or present symptoms or sensations; their inception;

or their general cause[]" even though they are hearsay. Tex. R. Evid. 803(4). In order for the evidence to be admissible under this exception,

> the proponent normally must show that (1) the declarant "was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements" and (2) "the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant."

*State v. Sanchez*, 722 S.W.3d 58, 70–71 (Tex. App.—Fort Worth 2025, pet. ref'd) (quoting *Lumsden v. State*, 564 S.W.3d 858, 883 (Tex. App.—Fort Worth 2018, pet. ref'd)).

The record reflects that McDonald, a registered nurse, was employed by Texas Forensic Nurse Examiners in 2022. McDonald testified that she received specialized training to be a licensed forensic nurse and provide care for victims of sexual assault and abuse. She explained that she performs exams on children and adults and that during the forensic history portion of the exam she obtains a "word-for-word account from the patients to why they are here for the exam."

McDonald testified that she conducted a forensic examination on Dara and Yvette and prepared separate reports detailing the examinations, which were admitted as evidence and the subject of Pineda's challenge. The reports include responses regarding why Mother brought them for the exam, details of the abuse including the type of penetration, physical and genital examination, and care plan

9

with discharge instructions and verbalized understanding. McDonald testified as to the same regarding her reports.

On cross-examination, McDonald testified, "What my patient speaks to me allows me to be able to care for the patient. My documentation could be used as evidence for this purpose." She explained that Dara and Yvette were referred for an examination from the children's assessment center. She testified that Dara's and Yvette's history event section included their discussion of more than one event.

The evidence shows that at the time of the forensic exam, Yvette was fifteen years old and Dara was seventeen years old, and both knew that Mother had taken them to Children's Safe Harbor for a sexual assault examination. McDonald expressly testified that the history obtained and documented in the report was necessary to treat the patients. On these facts, we hold that Dara's and Yvette's statements in the medical records, given to the forensic nurse concerning the assaults, were admissible under the Rule 803(4) exception for statements made for the purposes of medical diagnosis or treatment. *See* Tex. R. Evid. 803(4); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (concluding there was unchallenged evidence before the court that the purpose of the report was to render medical treatment to the complainant, so the trial court did not err in admitting the nurses' report of the examination); *Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd) (per curiam) (concluding that the child's

statements to medical providers describing the abusive acts and identifying the abuser "were reasonably pertinent to medical diagnosis and treatment" and properly admitted under Rule 803(4)); *see also Green v. State*, No. 09-15-00220-CR, 2017 WL 391368, at *4 (Tex. App.—Beaumont Jan. 25, 2017, no pet.) (mem. op., not designated for publication) (holding the trial court did not abuse its discretion by concluding that the paramedic's testimony and report were admissible over hearsay objections under Rule 803(4)). We overrule issue two.

## Conclusion

Having considered and overruled both of Pineda's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on March 31, 2026
Opinion Delivered August 5, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

11